1  DARRELL L. COCHRAN
   (darrell@pcvalaw.com)
2  KEVIN M. HASTINGS
   (kevin@pcvalaw.com)
3  Pfau Cochran Vertetis Amala PLLC
4  911 Pacific Ave., Ste. 200
   Tacoma, WA 98402
5  Tel: (253) 777-0799

6  ***Attorneys for Plaintiffs***

7

8

9

10

11                UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF WASHINGTON
12                        AT SEATTLE

13  A.G., individually,

14                        Plaintiff,

15       vs.                              No.

16  EVERETT SCHOOL DISTRICT, a public     COMPLAINT FOR DAMAGES
    corporation; CATHY WOODS, an
17  individual; JAMES DEAN, an individual; Demand for Jury Trial
    CRAIG VERVER, an individual,
18
19                        Defendants

20

21       COMES NOW Plaintiff, by and through her attorneys Darrell L. Cochran and Kevin M.

22  Hastings, and the law firm of Pfau Cochran Vertetis Amala PLLC, to bring a cause of action

23  against the defendant, and allege the following:

24

25

26

COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# I.   PARTIES

1.   <u>Plaintiff A.G.</u> Plaintiff A.G. is a sexual abuse victim.  At all relevant times, A.G. was a resident of Snohomish County, Washington, where she was repeatedly abused by Everett School District teacher, Craig Verver.

2.   <u>Defendant Everett School District.</u> Defendant Everett School District (the "District") is a public corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees. The District has its primary place of business at 3900 Broadway, Everett, Washington, Snohomish County, and is subject to the provisions of Title 28A of the Revised Code of Washington. At all times material, the District operated, and otherwise exercised control over, the public schools within the District, for the benefit of the school-aged children residing in Everett School District. The District is responsible for all conduct of its agents and employees with respect to the attendance of A.G. at school in the District.  At all relevant times, the District had supervision and control of A.G. in loco parentis.  The District also had a duty not to expose students to dangers that they otherwise would not have faced and/or not to increase the risks associated with existing dangers to its students.

3.   <u>Defendant Cathy Woods.</u>  Defendant Cathy Woods was the Cascade High School principal and a resident of Snohomish County, Washington, at all relevant times.  She was familiar with and knowledgeable of Defendant Craig Verver and had actual knowledge that Verver groomed Plaintiff A.G. for sexual contact and had sexual contact with her in his classroom with the door locked.  At all times relevant, Defendant Cathy Woods acted under the color of law.  Defendant Cathy Woods had the authority to take corrective action and had actual

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

notice of wrongdoing under 42 USC § 1983 and yet was deliberately indifferent to the wrongdoing.

4.      Defendant James Dean.  Defendant James Dean was a former Cascade High School principal and a resident of Snohomish County, Washington, at all relevant times.  He was familiar with and knowledgeable of Defendant Craig Verver and had actual knowledge about Verver grooming at least one female student for sexual contact in the early 2000s. At all times relevant, Defendant James Dean acted under the color of law.  Defendant James Dean had the authority to take corrective action and had actual notice of wrongdoing under 42 USC § 1983 and yet was deliberately indifferent to the wrongdoing.

5.      Defendant Craig Verver.  Defendant Craig Verver was a District teacher and resident of Snohomish County at all relevant times.  He groomed minor A.G. for sexual gratification, using his position of power to do so.  He then maintained a sexual relationship with A.G. and frequently had sexual intercourse with her.  At all times relevant, Defendant Craig Verver acted under the color of law.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction.  Subject matter jurisdiction is predicated on federal question jurisdiction (28 U.S.C. §1331 and § 1343) due to claims under 42 U.S.C. §1983 and Title IX.

7.      Venue.  Venue is proper in this district under 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district, in Snohomish County.

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

### III.   FACTS

8.   <u>Facts: the story of the School Defendants' betrayal of A.G. starts in the early 2000s.</u>  In the early 2000s, Craig Verver began grooming a young female Cascade High School student named A.T. for sexual contact.  Verver eventually had sexual intercourse with A.T. while she was still a student.

9.   <u>Facts: the School Defendants knew in the early 2000s that Verver was grooming A.T. for sexual contact.</u>  One day in the early 2000s, Everett School District Teacher Steve Garmanian went to Teacher Sarah Kelsey and asked her to report a sexualized touch that he witnessed Verver perpetrate against A.T.  As Kelsey testified to on August 9, 2017:

Q   And so what did you hear about the experiences that people were sharing?

A   That people had made reports of concern about Craig Verver's behavior other than the report that I had made, and I did not know that.

Q   And so what was the report that you had made?

A   At some point during A.T.'s junior or senior year – and I don't remember which – Steve Garmanian came to me, and he said he was wondering if I would speak to the administration on his behalf.  I was the department chair.

And he said that he walked into Craig's room and that A.T. was sitting on the couch.  Craig was caressing her face.  He said – I remember he said the word "caress," which concerned me.  And he said that this – "It looked oddly intimate" – those were his exact words.  I remember that – and would I talk to administration and tell them that.

And I said that I would.  I had a meeting scheduled with Jim Dean, who was the principal at the time, the next day, so I shared what Steve told me.

COMPLAINT FOR DAMAGES



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

10.     <u>Facts: the School Defendants did nothing after learning that Verver was grooming A.T. for sexual contact</u>:   Right away, Teacher Sarah Kelsey reported to former Cascade High School Principal Jim Dean that A.T. was sitting on Verver's couch while he was "caressing" her face and that "it looked oddly intimate."   Teacher Kelsey's expressed intent was to fulfill her mandatory responsibility to report potential sexual abuse by alerting the school principal.   Despite the mandatory duty, the District quashed the report, failing to tell to child protective services, to the police, or even to confront the perpetrator himself, Craig Verver.   As Teacher Kelsey recently testified on August 9, 2017:

Q       Okay.  But you were in contact with him in October of this last year?

A       He called me, yes.

Q       All right.  And so why did he call you?

A       He had heard about Craig Verver.

Q       So kind of take us through that conversation, if you would.

A       I remember he called because he had heard about the case, and he wanted to know what was going on.  And I said – I don't remember exact conversation, but I shared with him what I knew, that I had heard, and we talked about that one situation that I had reported.

        And I said, "Did you ever hear anything back?" And he said he hadn't.

Q       So he was calling you because he'd found out about A.T.'s lawsuit; right?

A       Yes.

Q       And he was sharing with you or discussing with you that both of you and he had reported a concern with this while A.T. was a student back in the early 2000s or late 1990s; right?



PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

A       I guess, yeah.  So we didn't recap the situation, but he wanted to know what was going on, and I said, "I had reported the thing you told me about.  Did you ever hear anything about that?" And he said, "No." So . . .

11.     <u>Facts: the School Defendants knew that Verver locked his door with students inside and papered over his windows in violation of District policy</u>.  It was widely known that Verver (1) locked his classroom so no one would get inside without his ability to respond and (2) papered his classroom windows so that no one would see what he was doing inside, both serious violations of District policies.  For safety reasons, the District prohibited teachers from papering over windows or locking the door with students inside.  As Everett School District Teacher Sarah Kelsey has recently testified on August 9, 2017:

A       We had – I know we had training days in the district about ethics of relationships.

Q       Okay.  What do you remember about that?

A       That there are boundaries.  Right?  Part of the reason that I don't lock my door and I keep my door open and I keep my window uncovered is as a result of those trainings, that we were instructed to – you know, not only to not have inappropriate relationships with students, but to make sure that we took steps to avoid the appearance of impropriety.

12.     <u>Facts: the School Defendants knew that Verver had a couch inside his classroom after they were prohibited</u>.  It was also widely known that Verver had a couch inside his classroom, which was prohibited by District policy following criminal behavior by a Glacier Peek High School teacher who had a sexual relationship with a female student in his classroom.

13.     <u>Facts: Disregarding glaring red flags, the School Defendants permitted Craig Verver to continue teaching with unmonitored access to female students</u>.  Disregarding glaring

COMPLAINT FOR DAMAGES



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

red flags that Craig Verver may be a sexual predator, the District continued to allow him unmonitored access to female students.  The years of unfettered behavior before the sexual abuse of Plaintiff A.G. included frequent use of his classroom for sexual intercourse with at least one former student, A.T.

14.    Facts: A.G. first enrolled in Verver's AP English class in the 2008-2009 school year.  A.G. first heard about Verver as a Sophomore at Cascade High School in 2007-2008. She was in chemistry—a junior-level course—when stories circulated about how scary Verver's class was.  The following year, A.G. was enrolled in Verver's AP English class.

15.    Facts: Verver started manipulating and grooming A.G. for sexual abuse right away.  A.G. was petrified to speak in Verver's class, mostly because he would mock other students and make every attempt possible to embarrass them.  Sometime within the first few weeks, A.G. spilled some coffee on Verver's classroom floor.  In response, Verver walked over to his cabinet, took out some cleaning supplies, put them on the desk in front of her, and said "clean it."  A.G. quickly cleaned it up, and Verver looked at her and said, "that won't happen again."  Verver's intimidation of A.G. was so significant that, by the fall of 2008, she worked tirelessly to prepare for his class to void being embarrassed or mocked in front of her peers.  On the hand, Verver would feed A.G. positive attention to keep her coming back for more.  On A.G.'s first novel essay, for example, Verver gave her a 100 percent and then told her after class, "I know you have a lot to say, and I want to hear you say it.  Don't forget you can breathe while you talk."

16.    Facts: Verver the School Defendants knew as early as Fall 2008 that Verver was grooming A.G. for sexual contact.  In the Fall of 2008, Verver began his calculated grooming practices with A.G. by texting her at school, in clear violation of District boundary invasion and

PCVA PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

social media policies.  One day, A.G. visited former Everett School District Teacher Kelly Keim in her classroom.  A.G. related to Teacher Keim that she was happy about a text that Verver had just sent her.  As Teacher Keim testified to on September 1, 2017:

> Q   And at some point you also learned that [A.G] would have ongoing cellular texting communication with Craig Verver?
>
> *          *          *
>
> A   Okay.  Yeah.  So, well, when she was my student, I knew that they were texting with each other, yes. . .
>
> *          *          *
>
> Q   And what contents of those texts made you feel uncomfortable.
>
> A   I just have one memory of when – of her coming into my classroom one morning and being giddy and excited about – I don't know if excited's the right word – but giggling about a text about – it was in the morning, and somehow she was texting him at – early, before school started, and about what she was wearing – short sleeves – and he didn't approve.  And it just got my radar up.
>
> Q   So Craig Verver was texting [A.G.] about what she was wearing and that he didn't approve of some particular outfit?
>
> A   Yes.
>
> Q   And – and [A.G.] was your student at that time?
>
> A   She was a TA for me.
>
> Q   That's when she was a TA?
>
> A   Yeah.  I had – had her as a freshman in, like, honors English.  And then I was her junior year when she was my TA

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

17.     <u>Facts: Verver's grooming behaviors were reported to the School Defendants in the Fall of 2008 and nothing was done.</u>  After Teacher Keim learned about the inappropriate text message from Verver to A.G., she went to her department chair, Everett School District Teacher Michelle Crews.  The two of them determined that the situation was worrisome and that it needed to be reported.  So Teacher Crews took the report to Cascade High School Principal Cathy Woods, who dismissed the report and told Crews she was being "gossipy," as Teacher Keim testified to on September 1, 2017:

> Q      And so – so once you learned about the contents of the texts where Craig Verver was asking about what [A.G.] was wearing at school and expressing his disapproval over that, what – what did you do?
>
> A      I talked to Michelle Crews about it – who – I – I believe she was our department head at the time, but she's a friend of mine too – and told her that it was a weird conversation [with A.G.] and made me uncomfortable.  And she agreed – and we both agreed that we should say something to our principal about it.
>
> Q      And did you?
>
> A      So then one way or another, [Michelle Crews] ended up talking to Cathy [Woods] without me being there.  And then what I remember about it is she came back from having talked to her kind of – feeling kind of sheepish about it, like, well, almost – I mean, you almost feel like you're being gossipy.  So I think that [Michelle Crews] came away from it feeling like, "Oh, don't – don't bother.  You know, there's really nothing to – they're not – [Cathy Woods is] not that interested in this.  It's not a problem."

                              *                    *                    *

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

Michelle was the one that had the direct interaction with Cathy, and then I was left feeling like there was no reason for me to go down to the office and have the same discussion that she had already had.  And I believe that – I mean, I'm sure that Michelle told her that I was the source of the original complaint or whatever.  And I don't know, I also kind of figured, like, if there was any concern, that Cathy would call me down and ask me for more details.

Q    Right.  And she never did?

A    No.

18.    <u>Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse.</u>  In or around January 2009, Verver made his first physical contact with A.G.  One day in class, Verver stood behind her while lecturing.  A.G.'s tag was sticking out of her shirt, and Verver seized the opportunity to reach his fingers down the back of her shirt on her bare skin, putting the tag down.  He then patted her back before walking away.  A.G. felt numb and was unable to keep taking notes.  She was confused and did not know how to interpret the touch.  She felt incapable of telling Verver to stop given his commanding presence in the classroom.

19.    <u>Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse.</u>  Later in her Junior year, A.G. was playing a card game with other pupils in Verver's classroom during lunch that involved slapping each other's hands.  One time, a friend sliced A.G.'s hand with her nail, and Verver responded by giving her a band-aid and patting it down, making kissing noises as if he was kissing her wound.

20.    <u>Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse.</u>  In her Senior year, A.G. took Verver's philosophy

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

class.  By early December 2009, Verver emailed A.G. after checking her online progress reports and seeing missing assignments: "Do I need to be spending more time looking at you sternly? Do I need to insist that whatever time you have between when the school day ends and when you drive little brother home be spent in my classroom or another, doing actual school work?" A few weeks later, over winter break, Verver emailed A.G. "Merry Christmas" and said that he was surprised she was "awake at midnight, since that means you were keeping Santa waiting. I hope that didn't' result in a lump of coal in your stocking."  The night before New Years Eve, at 10:25 p.m., Verver emailed A.G., "I hope 2009 was all you wanted it to be – and that 2010 is a million and six times better."  By January 8, Verver told A.G. in an email, "You're my favorite topic of conversation."  Each of these alarming emails was sent using District servers.

21.    _Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse_.  After being showered with flirtatious attention over winter break, A.G. went to Verver's classroom alone for the first time to ask about college because she was thinking about applying to Western Washington University ("WWU").  He responded enthusiastically to her inquiry.  It was at this point that A.G. recalls when she started talking to him after class more often.  On one of these occasions, A.G. told Verver that she thought a friend was suicidal.  Verver took her to the office to make an official report, which she did.  By January 21, Verver emailed A.G. about his desire for her to be his TA: "I've had another student ask to be my TA, but I only want one and you have first dibs right now."

22.    _Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse_.  On February 12, 2010, Verver emailed A.G. from his personal account because "the filters sometimes get in the way of easy communication" and that she could "use [his personal] address anytime."  To Verver, using his personal account was

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

"like swimming without a lifeguard," which he would later say to A.G.  In the same February 12 email, Verver relayed concerns from two teachers about her academic performance, one of which was regarding her senior project.  Verver claimed concern that A.G. was not performing well in other classes, and then he started asking her if she needed a quiet place to do homework in his classroom.

23.    Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse.  At first, A.G. politely declined staying in Verver's classroom for homework.  But A.G.'s academic performance continued to suffer—which she did not understand at the time was due to Verver's disruptive sexual grooming—and one teacher said early in 2010 that she had spoken with Verver and understood he offered his classroom as a place to work.  This teacher told A.G. that if she agreed to work in Verver's classroom, she could turn in missing assignments.  After this point, and in consideration of her academics, A.G. started staying after school in Verver's classroom with the intent of getting work done.  But rather than let her work, though, Verver continued grooming A.G. for sexual contact by asking her personal questions and showering her with special attention.  On one occasion after school, he said, "I think our relationship is at the point where we can talk about this, What do you think about sexting?"  Coinciding with the afterschool "studying," Verver started emailing A.G. over the weekend and texting her late into the evening after school.  A.G.'s schoolwork continued to suffer as Verver escalated his grooming behaviors.

24.    Facts: the School Defendants knowingly allowed Verver to continue grooming and manipulating A.G. for sexual abuse.  Toward the spring of her Senior year, A.G. told Verver that she was accepted to WWU.   Verver responded, "I'm happy for you but I'm also a little sad because I'll miss you," and A.G. replied, "Bellingham is not that far away."  Verver then

COMPLAINT FOR DAMAGES



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

said, "even Shoreline Community College would be too far" before hugging her.  After this, Verver began escalating his contact with A.G.  He would text her during the school day, and he would also encourage her to see him during his 6th period planning session when she was supposed to be in another class.  He would also text her during 6th period and ask what she wanted from Starbucks so that she would visit him after school for the drink.

25.    Facts: the School Defendants knowingly allowed Verver to escalate his sexual contact with A.G.  Sometime early in the second semester of A.G.'s senior year, Verver began physically embracing her in his classroom.  The door was always locked when she was in there after school, and Verver would grab his bag to signal that he was going home so A.G. would follow him out the door.  He would walk to the corner not visible from the window and embrace her.  Some embraces lasted longer and he would rub her back in a sexual way.  Verver also started regularly kissing A.G.'s forehead and began to hold her hand during class while she was his TA.  A.G. was in his classroom because her schoolwork was suffering, but Verver's obsession with grooming her for sexual abuse prohibited her from accomplishing meaningful school work, the effect of which was to keep her coming back to his classroom as frequently as possible.

26.    Facts: the School Defendants knowingly allowed Verver to escalate his sexual contact with A.G.  After spring break 2010, Verver's contact became even more sexual.  A.G. would get nervous every time he got up to leave at the end of the afternoon when she was supposed to be doing homework.  Verver would get up and make sure the door was locked and then move the television in front of the door to make it harder to see in.  He started embracing her for longer, whispering into her ear, and even nibbling it.  The sexual contact made her uncomfortable, but Verver told her that everything happening was natural and to just "let her

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654

body feel good." One day, Verver leaned on one of the desks and pulled her to him, positioning her so she was straddling his leg and then whispered into her ear, "we are quite the pair." This was the first time when she felt like she was involving herself in an affair, wondering if she was doing something that would hurt Verver's family.

27. <u>Facts: the unchecked sexual grooming and abuse severely affected A.G.'s academic performance</u>. As Verver's grooming and abuse escalated throughout 2010, A.G.'s academic performance steadily declined. She not only had a difficult time focusing outside of school given the shame and embarrassment Verver made her feel, but A.G. was always in Verver's classroom and unable to work because of his grooming and abuse.

28. <u>Facts: the unchecked sexual grooming and abuse severely affected A.G.'s academic performance</u>. A.G. was in Verver's Philosophy class and had him for a whole class period as his TA in 2010. She also would spend time in his classroom after school and at other times throughout the day. In addition to her grades suffering, A.G. also fell behind in her Senior project. But despite her declining academics, A.G. was never removed from her TA position with Verver to be placed into a Senior class where she could focus solely on her project necessary for graduation.

29. <u>Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.</u> Verver's increasingly intimate embraces with A.G. quickly escalated to kissing her in the corner of his locked classroom with the light off and the TV blocking the window. On one occasion in or around May 2010, as Verver was groping and kissing her, A.G.'s brother looked into the window and witnessed first-hand what he knew, even as a young student, was an alarming breach of professional behavior by Verver with his sister. A.G.'s brother immediately reported to their parents that he saw Verver kissing A.G.

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

He also reported Verver kissing A.G. to Cascade High School Principal Cathy Woods.  When her parents confronted A.G. about the kissing, she became very agitated and denied it.  Around the same time, A.G.'s delay with her senior project was jeopardizing her participation in graduation.  Given this groundswell, A.G.'s father had a meeting with Cascade High School Principal Cathy Woods scheduled to discuss both issues.

30.     Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  A.G.'s father's meeting with Woods was on May 27, 2010.  A.G. was also called into the meeting.  Her father brought up Verver kissing A.G., and Woods responded by claiming that the District had never had any similar issues with Verver previously.  She said that the school would "handle it."  Woods also asked A.G. about Verver, but A.G. thought she had done something wrong and denied any kiss.  Instead, she related a story when Verver had her make a report of a potential suicidal friend.  Woods responded by saying, "That's great!  That's exactly what he was supposed to do!  Tell me more ways why Verver was a good teacher.  We're looking for reasons to show that he was doing the right thing."

31.     Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  A.G. ran back to Verver's room to warn him, but he was not concerned.  For a few days, A.G. was not permitted to go into Verver's classroom to do homework and was instead required to go to Woods' office.  After a few days, Woods allowed A.G. to go back to Verver's classroom for her after school homework.  Verver told A.G. that after talking with Woods he believed everything was "copacetic," and he continued kissing and groping her in his classroom after school.  She remained Verver's TA and was not placed into the Senior class to finish her project.

COMPLAINT FOR DAMAGES

Page 15 of 24



32.     Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  On one of the last days of school, Verver was kissing, groping, and engaged in Frotteurism with A.G. when he ejaculated.  She had no idea what happened or why he was so embarrassed.  He apologized and grabbed a bunch of tissues and turned his back to her.  He said, "I don't want you to think this is what this is about."  Later, the seniors started practicing for the commencement ceremony in lieu of class, but A.G. would still spend whole class days in Verver's classroom.  She was needed to finish her senior project but could not complete it due to Verver's sexual grooming and abuse.

33.     Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  Verver would kiss A.G. between periods and for long times after school.  On one of these days when she was on campus before commencement, Verver asked A.G. if she wanted him to put his hands down her pants.  She said no, and he did not do so.  She was proud of herself for setting a boundary.  The next day, Verver asked her again, and she said no again.  But this time was different.  He ignored her, and forced his hand inside her pants and digitally penetrated her.  She was 17 years-old.  Afterwards, she felt sick, left, and was bleeding vaginally.  On her way home, she received a text from Verver that he "could not stop smelling [his] hand."

34.     Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  Teachers and custodians frequently walked into Verver's classroom while he was engaged in sexualized contact with A.G., and they had to stop quickly.  Even Woods walked-in on Verver sexually abusing A.G. during her senior year and *after* receiving the reports that he was grooming and touching her.  Woods would walk in to

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

see Verver alone with A.G. with the door locked and a couch in his classroom; she would simply remind Verver to keep his door unlocked. Woods otherwise said nothing.

35.    Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  Over the summer of 2010, A.G. visited Verver's classroom once or twice per week.  One day, the kissing and groping escalated to Verver standing there in his classroom naked, and rubbing his erect penis in A.G.'s face.  He asked her if she could put his erect penis into her mouth.  Before she could answer, he grabbed the back of her head and shoved her mouth into him.  She felt disgusting after and went home and took a long hot shower, got dizzy, and passed out.  Her mom took her to the emergency room.  The next day, Verver told her that he had been up all night worrying that shoving his erect penis into her mouth without consent was "less consensual" than it should be, and asked for forgiveness.

36.    Facts: the School Defendants received additional actual notice that Verver was having ongoing sexual contact with A.G.  The week leading up to A.G.'s birthday in 2010, Verver's wife was on vacation and his son was at camp.  During the day, Verver drove her to his house where he digitally penetrated her and encouraged her to perform oral sex on him, which she did.  The sexual contact continued when A.G. went to WWU for college.  In the summer of 2011, Verver had sexual intercourse with A.G.  Every time she saw him afterwards, they would have intercourse, even when she visited him during the school day.  During Christmas time in 2011, Verver had a door decoration covering his window, which he said was perfect because he could give him oral sex even during passing periods between classes.  The sexual relationship continued until 2017.  She neglected many relationships to maintain the secret, and she felt incredibly isolated.

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

37.     Facts: the School Defendants fell below the standard of care by failing to protect A.G.  The School Defendants knew or should have known about the sexual grooming and contact that was occurring between A.G. and Verver.  The School Defendants also failed to establish policies and procedures that would have prevented the sexual relationship, driven by Verver's manipulation and grooming, from taking root and then flourishing.  The School Defendants were charged with protecting A.G., and it fell below the standard of care in doing so by knowingly allowing the relationship between A.G. and Verver to become too close and intimate.  Had proper safeguards been put in place, A.G. would not have been subjected to Verver's manipulation and ultimate sexual contact.  A.G. has failed a state-law tort claim form and will be amending her complaint for damages to include these state-law violations.

38.     Facts: The School Defendants had a special relationship with Plaintiff.  The School Defendants had a special relationship with Plaintiff and stood *in loco parentis* with her.  She was required by law to attend school, and while Plaintiff was in School Defendants' custody, they owed her a heightened duty to protect her against harm and to ensure that she was properly educated.

39.     Facts: the School Defendants fraudulently concealed and withheld information that Verver was a sexual predator who targeted his female students.  The School Defendants had actual knowledge that Craig Verver was a predator who targeted his minor female students for sexual assaults.  But rather than report Verver to authorities—or even warn Plaintiff—the School Defendants negligently, recklessly, and/or purposefully concealed the information by systematically quashing all of the significant concerns that were being raised about Verver over the years.  School Defendants' concealment of the information continued until only recently

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

when it was discovered in a companion case brought by A.T. that they knew Craig Verver was a sexual predator from the beginning of his teaching career.

40.     Facts: Defendants' fraudulent concealment hid the nature of Verver's sexual abuse. Whereas the School Defendants knew that Plaintiff was being groomed and manipulated by Craig Verver for sexual assault, Plaintiff, as a young adolescent, did not.  Once she fell victim to his sexual and psychological abuses, the pattern continued until March 2017.  Only recently did Plaintiff learn that School Defendants knew all along that Craig Verver was a sexual predator.  This concealment of material facts regarding Craig Verver's predatory behaviors, some of which were directly related to Plaintiff, prohibited her from realizing she had causes of action against the School Defendants.

41.     Facts: A.G. did not know or even begin to understand the extent of her injuries and damages until recently.  A.G. first started to think that Verver's action might have been unethical once she started working in an elementary school in the Fall of 2015 and received formal training on boundaries and appropriate interactions with students.  But it was not until April or May of 2016 when Verver disclosed his relationship with A.T. when A.G. started to consider if she was being abused and if Verver was the reason she had been so sad and lonely through college.  Still, she thought her situation was different than A.T.'s and continued to blame herself for being a woman and not telling anyone when the sexual contact happened.

42.     Facts: A.G. did not know or even begin to understand the extent of her injuries and damages until recently.  A.G. learned about A.T.'s lawsuit on or around August 24, 2016.  She was immediately terrified of becoming involved against her will.  From August 2016 through February 2017, Verver spoke to A.G. about the lawsuit and how A.T. was ruining his family and how she was evil and nasty.  At this point, A.G. was working in a crisis residential

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

center for vulnerable youth, and it became apparent to her how abhorrent it would be for her as an adult to initiate or allow a physical relationship with any of the children there.  A.G.'s observation at the crisis center, coupled with the support she saw A.T. receiving (when she thought no one would believe or support her), gave her the courage to end all sexual relations with Verver in early 2017.  He agreed, but he consistently violated the boundary A.G. set, initiating and coercing sexual contact while she stayed silent or said she did not want it.  At this point, A.G. felt like she had been trained and like her consent never actually mattered to begin with, which was the first time she started to understand that she was groomed and manipulated for controlled sexual contact.

43.    Facts: A.G. is still to this day learning about and uncovering the damage she has suffered.  A.G. is still learning about and uncovering the damage she has suffered as she furthers her understanding of the traumatic bonds that sexual abuse creates, and the ways that victims of such betrayal and abuse come to desperately identify with their abusers to cope with and survive the trauma.

44.    Damages.  As a proximate result of Defendants' conduct alleged herein, Plaintiff A.G. suffered damages for violations to her constitutional rights, as well as mental anguish and emotional distress.

45.    Punitive Damages.  Defendants acted with callous and/or deliberate indifference and with reckless disregard of Plaintiff's constitutional rights.

COMPLAINT FOR DAMAGES

Page 20 of 24

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

# IV.    CAUSES OF ACTION

## COUNT I
## VIOLATION OF CIVIL RIGHTS
## AS TO WOODS, DEAN, AND VERVER
## (42 U.S.C. § 1983)

46.    Civil Rights Violation. Based on the paragraphs set forth and alleged above, Defendants Verver, Woods, and Dean are liable for compensatory and punitive damages for their creation of an actual, particularized danger that Plaintiff A.G. would be sexually groomed and assaulted Verver, done in deliberately or with deliberate indifference toward the safety and wellbeing of A.G., in conduct that shocked the conscious, including Defendant Verver's intentional sexual battery and Defendants' failure to protect the Plaintiff A.G. from sexual abuse and exploitation while she was attending school, for Defendant Woods' and Deans' fraudulent concealment of facts that Verver was a sexual predator who preyed on young female students, and for Defendant Woods' and Deans' deliberate indifference toward identifying Plaintiff A.G. as sexual abuse victims and reporting the abuse to authorities and to the victims' parents, all done in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

## COUNT II
## VIOLATION OF CIVIL RIGHTS - *MONELL*
## AS TO THE DISTRICT
## (42 U.S.C. § 1983)

47.    Civil Rights Violation. Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in failing to promulgate, issue, and enforce appropriate procedures and policies, including but not limited to (1) the reporting of known or suspected sexual abuse of A.G., (2) the safe education of its students that was free from sexual abuse and exploitation, and (3) the reporting of a known sexual predator who preyed on young female students, the failure of which was done in deliberate indifference

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

to Plaintiff A.G.'s and other students' wellbeing and safety, as well as for its actions in failing to adequately train, monitor, or supervise its administrators, staff, and teachers to ensure the safety of students free from sexual exploitation, including A.G., all in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

**COUNT III**
**VIOLATION OF TITLE IX**
**AS TO THE DISTRICT**
**(20 U.S.C. § 1681, *et seq.*)**

48.    <u>Title IX</u>. Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in creating and/or subjugating Plaintiffs A.G. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), when the District and its officials had actual knowledge of the sexual assaults of A.G. created by its failure to supervise Defendant Verver and to protect children, when the District and its officials fraudulently concealed actual knowledge that Verver was a sexual predator who preyed on young female students, and when the District and its officials failed to take immediate, effective remedial steps to resolve the sexual harassment and instead acted with deliberate indifference toward Plaintiff A.G. and other similarly situated students, the result of which was to exclude Plaintiff from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

**COUNT IV**
**FRADULENT CONCEALMENT**
**AS SCHOOL DEFENDANTS**
**(Federal Common Law)**

49.    <u>Fraudulent Concealment.</u>  Based on the paragraphs set forth and alleged above, the School Defendants had a special relationship with Plaintiff and fraudulently concealed

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

material facts, done in bad faith and by using deceptive tactics, pertaining to whether she had

legal claim against the School Defendants for the harm she suffered, including but not limited

to claims under 42 U.S.C. § 1983 and 20 U.S.C. § 1681, *et seq*, the result of which was to

equitably toll the statute of limitations and proximately cause damages.

## V.      RESERVATION OF RIGHTS

50.     <u>Reservation of Rights.</u> Plaintiff reserves the right to assert additional claims as

may be appropriate following further investigation and discovery.  Plaintiff specifically will

add a Washington negligence claim once the period for the tort claim runs.

## VI.      JURY DEMAND

51.     <u>Jury Demand.</u> Under the Federal Rules of Civil Procedure, Plaintiff demands

that this action be tried before a jury.

## VII.      PRAYER FOR RELIEF

52.     <u>Relief.</u> Plaintiff respectfully requests the following relief:

A.      That the Court award Plaintiff appropriate relief, to include all special
and general damages established at trial;

B.      That the Court impose punitive damages under any provision of law
under which punitive damages may be imposed;

C.      That the Court award costs, reasonable attorneys' fees, and statutory
interest under any applicable law or ground in equity, including 42
U.S.C. § 1988 and all other applicable bases for an award of attorneys'
fees and litigation costs;

D.      That the Court award pre-judgment interest on items of special
damages;

COMPLAINT FOR DAMAGES

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

E.    That the Court award post-judgment interest;

F.    That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

G.    That the Court enter such other and further relief as the Court may deem just and proper.

RESPECTUFLLY SUBMITTED this 18th day of September, 2017.

By:   /s/ Darrell L. Cochran
Plaintiff's Attorney

By:   /s/ Kevin M. Hastings
Plaintiff's Attorney

DARRELL L. COCHRAN
WSBA #22851
KEVIN M. HASTINGS
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799

COMPLAINT FOR DAMAGES

Page 24 of 24



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654